HECTOR RODRÍGUEZ-SOLER ET AL., Plaintiffs and Appellees, *v.* RAMÓN ALONSO ET AL., Defendants and Appellants.

No. 4046. Argued February 17, 1927.—Decided July 26, 1927.

*José G. Torres* for the appellants. *V. M. Fernández* and *M. Tous Soto* for the appellees.

Mr. Justice Franco Soto delivered the opinion of the court.

The plaintiffs set up two causes of action. One is that of the generic revendication of the joint ownership of one-half of a certain urban property situated in the town of Vega Baja, and the second, which is based on the first, seeks to invalidate the execution sale made by the marshal of the Municipal Court of Vega Baja to the defendant in an action of debt brought by Successors of Sobrino & Co. against Héctor and Julio César Rodríguez and Providencia Rodríguez y Soler.

The revendicatory action is based substantially on the title which the plaintiffs claim to hold jointly to one-half of the said property and on the actual possession of the property by defendant Ramón Alonso. It is alleged by the

plaintiffs in connection with the nullity of the sale of the property that on February 9, 1914, before the Municipal Court of Vega Baja, the firm of Successors of Sobrino & Co. brought an action against the defendants to recover the sum of $198.40; that in the said action no summons was issued for the citation of the defendants, but appearance was made by Quiterio Rodríguez who said that he was the guardian of the minors Héctor and Julio César Rodríguez, although he really was not, and in their names confessed judgment when neither the District Court of San Juan nor any other court had authorized such appearance and confession; that the Municipal Court of Vega Baja, by virtue only of the said confession, entered judgment on May 6, 1914, against the defendants for the sum claimed in the complaint with lawful interest; that a writ of execution of the judgment was issued to the marshal of the municipal court and without levying on a described property of 70 acres or doing any other act of seizure, he set the 10th of June, 1924, for the sale by auction of that property; that the sale was advertised by notices published in the issues of the newspaper called *La Democracia* of May 27 and June 3 and 10 of 1914 and the property was sold for $525 to defendant Ramón Alonso who immediately took possession of it and still holds possession.

The defendant admitted certain facts, denied others, and substantially alleged as a defense that Quiterio Rodríguez was at the time the lawful guardian of the minor plaintiffs, who were then defendants, authorized by the District Court of San Juan, having taken the oath and his guardianship being registered; that the guardian needed no authorization by the court in order to answer the complaint against the wards; that the purpose of the appearance entered by the said guardian was to consent to the entry of judgment in the manner established in sections 358 *et seq.* of the Code of Civil Procedure, which he did for the purpose of saving costs for the benefit of the minors, since the obligation sued on by Succes-

sors of Sobrino & Co. was legally acknowledged in the deed of partition executed by the heirs of the spouses Miguel Rodríguez Sierra and Angelina Soler; that the judgment of the Municipal Court of Vega Baja was also rendered by confession under oath made by the other adult defendant, Providencia Rodríguez; that in the execution of that judgment all legal formalities had been complied with, although Successors of Sobrino & Co. answered the complaint because they had been made defendants by virtue of the demurrer to the original complaint filed by the other defendant. In reality they were not necessary parties because the complaint is based essentially on jurisdictional defects which *prima facie* nullify the proceedings and consequently the judgment as well as the public sale.

The trial court, which finally arrived at this conclusion, rendered judgment for the plaintiffs, recognizing them as the owners of an undivided half interest of the property described in the complaint and besides ordered the defendant to pay to the said plaintiffs half of the net proceeds from the fruits, "or the sum of $75 annually from the 16th of June, 1914, until the complete delivery of their joint portion."

In order to reach this conclusion the court found the following facts:

"That plaintiff Julio César Rodríguez was emancipated by an order of Charles E. Foote, Judge of the First District Court of San Juan, of February 11, 1925.

"That Providencia Rodríguez y Soler died intestate in Quebradillas on February 5, 1916, while married to José Gonzalo Lloveras y Terron, leaving as her only descendant a child of that marriage named Gilberto Lloveras Rodríguez, born on August 16, 1912.

"That on December 9, 1910, Pedro de Aldrey, Judge of the First District Court of San Juan, appointed José Quiterio Rodríguez guardian of the minors Providencia, Isabel, Héctor Miguel and Julio César Rodríguez y Soler.

"That by a deed dated September 30, 1912, executed before notary José G. Torres a partition of the estate was made among the heirs of Miguel Rodríguez Sierra, the father of the said minors,

with the appearance of the guardian who acknowledged, among others, an obligation in favor of Successors of Sobrino & Co. for $198.48, the partition being approved by Félix Córdova Dávila, Judge of the First District Court of San Juan, on December 6, 1912. It is stated in the deed that the sisters Providencia and María Isabel shall pay, in consideration of the portions allotted to them, the sum of $300 to the brothers Héctor and Julio César, and the former besides shall take upon themselves the obligation to pay the debts; and it is stated in the order of December 6, 1912, that the approval is given without prejudice to the judicial authorization that must be obtained for the investment of the amount of $300 which they bind themselves thereby to pay to the infant heirs, their coheirs.

"That on February 9, 1914, in the Municipal Court of Vega Baja, Successors of Sobrino & Co. filed an action against the heirs of Miguel Rodríguez Sierra and Angelina Soler, composed of Providencia Rodríguez, of age and married to Gonzalo Lloveras; of Héctor and Julio César Rodríguez, minors under the guardianship of their uncle José Quiterio Rodríguez, and of Isabel Rodríguez who married Eliseo Fernández and, having died without descendants or ascendants, left as her heirs the other plaintiffs and the surviving spouse Eliseo Fernández as to the usufructuary quota, it being alleged in the complaint that by a deed of September 30, 1912, the sisters Providencia and Isabel Rodríguez, emancipated by marriage, and José Quiterio Rodríguez as guardián of the minors Héctor and Julio César Rodríguez, made the partition of the estate left by their deceased parents Miguel Rodríguez Sierra and Angelina Soler Hernández and acknowledged thereby an indebtedness in favor of the plaintiff partnership in the sum of $198.48 to be deducted from the estate, which sum had not been paid, drawing interest as agreed at 1% monthly, and prayed for a judgment for the amount of the indebtedness, with interest and costs. It does not appear from the record that any service of summons was made on the defendants, but it contains a motion for summoning Eliseo Fernández by publication; a statement under oath by José Quiterio Rodríguez to the effect that he had been appointed guardian of the minor Isabel Rodríguez y Soler, who had died a short time before and who had married Eliseo Fernández who had left the Island; an order from the court directing the summoning by publication of defendant Eliseo Fernández and an affidavit of the manager of *La Democracia* regarding the publication; a writing from Providencia Rodríguez admitting the facts of the complaint and

acquiescing in a judgment against her; another writing from José Quiterio Rodríguez as guardian of the minors Héctor and Julio César Rodríguez y Soler containing similar admittance and acqui-escence; a judgment rendered on May 6, 1914, by virtue of the default of defendant Eliseo Fernández and of the acquiescence of the other defendants, ordering the defendant heirs to pay to the plaintiff partnership the sum of $198.48 with legal interest thereon and the costs. It appears also that on May 23, 1914, a writ of execution was issued without showing that the property was levied on, but there is a clipping from a newspaper with the printed notice of the sale for June 16, 1914, of a rural property of 47 acres in the ward of Algarrobo, another of 70 acres in the ward of Pugnado Afuera and an urban property on Third Avenue, all situated in Vega Baja, the last being the subject of the complaint, and attached to the said clipping is an affidavit of Carlos R. Aguiar showing that the said summons had been published in *La Democracia*, a newspaper published in San Juan, in the issues of May 27, and June 3 and 10, 1914. There also appears the report of the public sale of the properties therein said to be levied on, with no mention of the first of the two pieces of property described in the notice, but in the first place property No. 2 of 70 acres which is the object of this action and in the second place the urban property under num-ber 3. The rural property appears as having been sold to the de-fendant herein Ramón Alonso for the sum of $525 and the urban property to Tomás Landrón for the sum of $630 by deed No. 54 executed on June 20, 1914, before notary José G. Torres. The marshal states in his return on the writ of execution that he did not sell publicly the rural property in the ward of Algarrobo marked No. 1 in the notice because he had received a writ of injunction from the District Court of San Juan suspending its sale at auction.

"That by virtue of the judicial sale made by the marshal of the Municipal Court of Vega Baja, the defendant Ramón Alonso took possession of the property on June 16, 1914, and has been collect-ing its profits without ever having shared them with the plaintiffs.

"That the proceeds from that property may be estimated, after deducting the expenses, at $150 annually. The court comes to the conclusion on the testimony of the witnesses for the defendant, be-cause the witness for the plaintiffs limited his testimony to the statement that the property has very little rich land, has much rock and from 6 to 8 acres of level ground, and that if leased would not have been worth more than $35 monthly until the construction

of the public road five years ago, and since then it would be worth $1,000 on account of the stone that might be sold, admitting that it had nothing but rock and bushes when the defendant bought it.

"That on October 3, 1914, the guardian José Quiterio Rodríguez notified the district attorney and filed a motion informing the court that the $300 belonging to the minors Héctor Miguel and Julio César had been paid by virtue of the sale of the two properties allotted to Providencia and Isabel Rodríguez, and applied for authorization to invest that sum in repairing two frame houses which had been awarded to the minors, although no order appears in connection with that application."

Later, in setting forth its legal grounds, the court states, among other grounds which we will examine also, that the sale of the property to the defendant is void because it does not appear from the record that the minors had been summoned personally, they being the wards of Quiterio Rodríguez, and also because it does not appear from the said record sent up from the Municipal Court of Vega Baja that a levy had been made on the properties publicly sold. There is no doubt that the omission of either requisite constitutes a jurisdictional defect which voids the proceedings, the judgment and consequently its execution.

The appellees were under 14 years of age at the time they were sued by Successors of Sobrino & Co. in the Municipal Court of Vega Baja.

The appellant contends however (1) that the mere fact that the summons is not attached to the record is no proof of failure of personal service of summons on the said minors and that it was incumbent on the plaintiffs to show that such summons had not been served, and (2) that the guardian having appeared in behalf of the minors, that appearance is a substitute for the appearance of the minors who, lacking the legal capacity to appear, are represented by their guardian.

We must not overlook the fact that municipal courts are not courts of record, and the fact that the record is silent

in regard to the existence of any jurisdictional question can not create the presumption of the existence of such proceedings. On the contrary, the presumption is that they did not exist. The question then would be whether that presumption may be destroyed by evidence *aliunde*. Therefore the burden of proof would pass to the defendant to show that the jurisdictional defect of the summons had really existed, but it does not appear from the record that the appellant made any effort in that respect.

"There is a well recognized distinction between the presumption to be given the judgment of a court of limited or special jurisdiction and the judgment of a court of general jurisdiction. It is the well established general rule that when a domestic judgment of a court of superior and general jurisdiction acting within the ordinary scope of that jurisdiction is assailed collaterally, every presumption is made in favor, not only of the proceedings, but of the court jurisdiction, both as regards the subject matter and of the parties, unless the contrary affirmatively appears on the face of the record itself. . .

"As to courts of inferior jurisdiction or limited powers, and not of record, a different rule prevails in regard to presumption as to judgments from that recognized and enforced as to judgments of courts of general jurisdiction. The jurisdiction of inferior courts not of record must be affirmatively shown and no presumption thereof exists. In fact the rule has been laid down that the presumption is that a court of limited or inferior jurisdiction is without jurisdiction when the jurisdiction does not appear, and the jurisdictional facts are not duly alleged. At least if the fact of jurisdiction is denied, the burden of proof is on the party relying on a judgment of an inferior court to show that the court had jurisdiction, and recitals in decrees of courts of special and limited powers can not give jurisdiction." 15 R.C.L. 880-882.

The case of *Torres & Enseñat* v. *Alfaro*, 24 P.R.R. 683, dealt with proceedings before a municipal court, and this court said:

"Section 92 of the Code of Civil Procedure provides that 'when the summons is served by the marshal it must be returned with (his) certificate of its service, and of the service of a copy of the

complaint, when such copy is served, to the office of the secretary
from which it is issued,' and that 'when it is served by any other
person, it must be returned to the same place with an affidavit of
such person of its service and of the service of the copy of the
complaint, when such copy is served.' In view of this mandatory
provision, there is no doubt that no matter who serves the summons
it must be returned to the office of the secretary of the court in the
manner prescribed by the statute.

"And such return is absolutely necessary before default can be
entered or judgment rendered, for only by an examination of the
return on the summons can it be determined whether the summons
was duly served and the court thus acquired jurisdiction of the
person of the defendant.

"In order to bring a defendant under the jurisdiction of the
court he must be summoned in the manner prescribed by law, and
a return must be made to the court showing that the summons was
so served and the statutory requirements duly complied with, with-
out prejudice to the provisions of section 98 of the Code of Civil
Procedure. *Orcasitas* v. *Márquez et al.,* 19 P.R.R. 454.

"And the proof of the service of the summons and of a copy
of the complaint upon the defendant, when made by a person other
than the marshal, must be an affidavit made by such person, ac-
cording to section 97 of the Code of Civil Procedure.

"In the present case there was no proof before the Municipal
Court of Coamo that the summons had been served, for the affidavit
of Jovino Torres to that effect was made before the justice of the
peace of Juana Díaz on November 26, 1910, after the judgment had
been entered on November 18—that is, eight days before the af-
fidavit of service. The defendant was not under the jurisdiction
of the court when the said default judgment was entered against
him."

The second contention of the appellant as to whether the
appearance of the guardian in behalf of the minors is a
substitute for the personal service raises a legal point. The
question, however, likewise appears clearly decided by juris-
prudence already laid down by this court. In *Orcasitas* v.
*Márquez et al., supra,* this court expressed itself as follows:

"The parts of section 93 of the Code of Civil Procedure which
are pertinent to the issue read:

" 'The summons must be served by delivering a copy thereof, as follows:

\* \* \* \* \* \* \*

" '3. If against a minor under the age of 14 years, residing within said Island, to such minor, personally, and also to his father, mother or guardian; and, if there be none within this Island, then to any persons having care or control of such minor, or with whom he resides, or in whose service he is employed.

\* \* \* \* \* \* \*

" '6. In all other cases, to the defendant personally.'

"Hence, in accordance with the letter of the law, which is so clear as to admit of no other construction, it is necessary to summon a minor personally whenever an action is brought against him.

"This is not the first time this question has arisen. In the case of *Vias* v. *Estate of Pérez et al.,* 15 P.R.R. 714, the following doctrine was established by this court:

" 'Where the defendants in a suit are minors, notice of citation must be served upon the father or the representative of the minor, personal notice on defendant minors being necessary in any case, whether or not it appears that they are over 14 years of age. It is further necessary, in order that the court may acquire jurisdiction over such minors, that the return made by the marshal shall show that they have been personally served.'

"The Supreme Court of California in construing and applying provisions of law similar to those in force in Porto Rico on this point decided in the case of *Fanning* v. *Foley,* 99 Cal. 336, that service of a summons upon the guardian of a minor, without serving it also upon the minor personally, was insufficient, and that a default entered against the guardian did not bind either the guardian or the minor and that the judgment rendered by default was absolutely void.

"It seems at first sight that summons having been served on the guardian of a minor under 14 years of age no practical result would ensue from personal service on the minor himself, but if the question is thoroughly analyzed, it will be seen that one of the objects of the law is to make sure, as far as possible, in a direct manner, of the actual and positive existence of the defendant before allowing the court to take jurisdiction."

Therefore, the voluntary appearance of the guardian in behalf of the minors was no substitute for personal service,

and the trial court in reaching that conclusion did not commit the error assigned.

Another omission which has the character of a jurisdictional defect is the failure of the marshal to levy on the property subject to execution in the previous action of Successors of Sobrino & Co. against the plaintiffs. The appellant made the same allegation as in the failure to serve notice, that is, that it was incumbent on the plaintiffs to show that no levy had been made. Therefore, the same reasoning applies—the burden of proof on this point passed to the defendant.

The appellant furthermore alleges that a levy was not a prerequisite for the sale to the extent that its absence is sufficient to render null and void the public sale. The appellant does not cite authorities in support of his contention. On our part we have examined the authorities in connection with this matter and they are to the effect that the sale is void. The following is from 23 Corpus Juris, 425-26:

"According to the great weight of authority, to enable the sheriff to sell the property and vest in the purchaser at the sale a valid title, the levy upon the property so sold is indispensable, and this is true whether the property is personal or real. A sale unless preceded by a valid levy, is invalid, and the purchaser acquires no title. The officer, after having levied upon the property and advertised it for sale, has no authority to substitute and offer for sale other property than that taken, even with the debtor's consent. In some jurisdictions a formal levy of an execution upon real estate under a judgment which constitutes a lien on the land, is unnecessary, and the failure of the sheriff to levy an execution upon land before selling it will not vitiate the title of a purchaser. The mere issuance of an execution does not give the officer to whom it is directed the right of possession of any property until he has levied the writ thereon."

In 17 R.C.L. 103, it is said that it seems to be a well established principle that lawful levy and seizure are essential to the validity of an execution sale. It is said also that

there is a line of authorities holding that the validity of a marshal's sale is unaffected by the failure of the officer to make a levy as prescribed by statute and that according to this rule if the property is held under attachment to satisfy a judgment, no levy of execution is necessary. It is also said that other courts have held that a levy on land is un· necessary when the judgment is a lien thereon, and, hence, where land is sold under execution it is only essential that the requirements of the law be observed and that it be fully made known what property, describing it with sufficient certainty, is exposed for sale and what the highest bidder is to acquire.

Similarly this court had held that in mortgage foreclosure proceedings a levy is unnecessary owing to the very nature of the action whereby the property is directly liable for the payment of the obligation. See the case of *Thyboe et al.* v. *San Juan Fruit Co.*, 36 P.R.R. 804. But this is the exception to the general rule which establishes, as we have seen, the necessity of a levy in personal actions to give validity to an execution sale.

Section 9 of the Act to secure the effectiveness of judgments of March 1, 1902, in its pertinent part reads as follows: "The attachment and order prohibiting the alienation of real property shall be recorded in the registry of property the defendant being notified thereof . . ."

It does not appear from the record that Successors of Sobrino & Co. held the property under attachment, in accordance with said section 9, nor does it appear from the record that after the issuance of the writ of execution the marshal made any levy, as his mere statement in the report of the execution sale saying: "I proceeded to sell publicly the prop· erty attached," is not sufficient to prove the existence of the levy. It would have been sufficient if that officer had complied with the provisions of section 5 of the Act relating to judg-

ments and the manner of satisfying them of March 9, 1905, reading as follows:

"In order to make a levy on immovable property it shall not be necessary for that officer to go upon the ground, but it shall be sufficient for him to endorse such levy on the writ, and he shall send a copy of such writ, with the endorsement thereon, to the registrar of property of the district wherein the property is situated, to be noted in the register of property."

Under the circumstances of the present suit in which the nullity of the proceedings and that of the execution and sale are decreed, there is no ground for the plea of prescription based on sections 1268, 1864 and 1858 of the Civil Code. It would be sufficient to refer to the case of *Solá* v. *Castro,* 32 P.R.R. 740, where it was said:

"The plea of prescription is without merit. The essential basis on which it is sought to have the judicial sale adjudged null and void renders the provisions of section 1268, *supra,* inapplicable, for if the writ of execution is void, there are no elements to make apparent the existence of a contract and the efficacy of the contract of sale was subordinate to the validity or invalidity of the writ of execution; and on this point we apply the doctrine laid down by this Supreme Court in the case of *Oliver et al.* v. *Oliver,* 23 P.R.R. 168, where it was held:

" 'The four years' limitation fixed for actions for nullity applies only to contracts containing the requisites mentioned in section 1228 of the Civil Code.' "

See also the case of *López et al.* v. *Quiñones,* 30 P.R.R. 317.

The appellees claim the products from the time when the appellant took possession of the property, and the trial court says in regard to this point:

"In our consideration of the foregoing point we incidentally took up the question that if the defendant is not a *bona fide* possessor the plaintiffs are entitled to the fruits which have been produced. As the plaintiffs have not shown what are the net proceeds from the property, such fruits should be appraised at $150 annually as estimated by the defendant after deduction therefrom is made of

·the expenses. Morales v. Landrau, 15 P.R.R. 761, Arvelo v. Banco Territorial y Agrícola, 29 P.R.R. 996.''

The findings of the trial court are sustained by the evidence.

For the foregoing reasons the judgment appealed from must be affirmed.